UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| LUCINDA LC and JUNE WHEATLEY, on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>JAY JONES, in his official capacity as Attorney General of Virginia, and<br><br>KEMPER FUNKHOUSER, CAVELLE MOLLINEAUX, JEREMY DALPIAZ, AEKTA CHAWLA, RENE FONSECA, PIERI BURTON, BERNICE TRAVERS, RAJESH PATEL, and KIT HALE, in their official capacities as Members of the Virginia Real Estate Board, and<br><br>BARRY MOORE, BRIAN REAGAN, MORTON MARKS III, AMANDA BUYALOS, ANGELA WEST, STANLEY REID, SHION FENTY, STUART GILCHRIST, JAY SOM, STEVEN RIVERA, JOHN SCOTT and ANGELO PHILLOS, in their official capacities as Members of the Virginia Fair Housing Board, and<br><br>ANIKA COLEMAN, in her official capacity as Executive Director of both the Virginia Fair Housing Board (VFHB) and the Virginia Real Estate Board (VREB),<br><br>    *Defendants*. | Civil Action No. 26-cv-_____ |

**PLAINTIFFS' VERIFIED COMPLAINT**

i

## INTRODUCTION

1. Plaintiff June Wheatley, a dedicated VA-licensed real estate salesperson and manager of her family's rental properties, owned by Plaintiff Lucinda LC for the benefit of her aging father, has long strived to provide safe, affordable homes for hardworking tenants. But when a mercenary "tester" from an activist organization posed as a prospective renter only to ensnare her in a discrimination complaint for politely declining federal Section 8 vouchers—a voluntary program under federal law—Wheatley found herself thrust into a nightmarish battle against abusers of Virginia's Fair Housing Law (VFHL). At stake are her family's finances, her real estate license, and her professional reputation.

2. Landlord participation in the federally-run, locally-administered "Section 8" housing program—which provides vouchers to low-income families to rent in the private housing market—requires extraordinarily intrusive government access to the property and the landlord's financial records and computers. If the federal government mandated such warrantless searches against landlords solely for being landlords, it would violate the United States Constitution's Fourth Amendment. Accordingly, participation in Section 8 (also known as the federal "Housing Choice Vouchers" program, 24 CFR § 982 *et seq*.) is strictly voluntary. Some landlords are willing to exchange their freedoms for the financial benefits of participating in Section 8; others do not find the additional hassle worthwhile. But Virginia's 2020 VFHL, which bars discrimination based on the "source of funds" from tenants, Va. Code §§ 36-96.1:1, 36-96.3, unconstitutionally coerces participation in Section 8 for property owners, managers, and real estate licensees who own, manage, or work with more than four Virginia rental units. Failure to "voluntarily" join the Section 8 program allows mercenary actors with no actual stake in renting units to bring ginned-up cases of "discrimination" against landlords, with risk of substantial financial penalties, and, in the case of real-estate licensees like Ms. Wheatley, the risk of loss of her license. This coercion is unjust and unconstitutional. Ms. Wheatley and Lucinda LC bring this class action to vindicate the rights

of landlords to be free from involuntary government searches and participation in the Section 8 program.

3. Section 8 participation comes with substantial costs for traditional landlords: They must enter Housing Assistance Payment (HAP) contracts with their local government Public Housing Authority (PHA), which by federal law must *match* the standard form issued by the federal Department of Housing and Urban Development. 24 C.F.R. § 982.451 ("must be in the form required by HUD"). The current HUD HAP form includes several provisions that grant PHAs immediate, warrantless access to the premises, equipment, and records of participating Section 8 landlords without pre-compliance review. This includes:

   a. "The owner must grant such access to computerized or other electronic records, and to any computers, equipment or facilities containing such records, and must provide any information or assistance needed to access the records." HUD Form 52641, Part B, ¶ 11(c).

   b. "The PHA, HUD and the Comptroller General of the United States shall have full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract, including the right to examine or audit the records and to make copies." HUD Form 52641, Part B, ¶ 11(b);

   c. "The PHA may inspect the contract unit and premises at such times as the PHA determines necessary, to ensure that the unit is in accordance with the [housing quality standards]." HUD Form 52641, Part B, ¶ 3;

   d. "The owner must give the PHA any information requested by the PHA on the rents charged by the owner for other units in the premises or elsewhere." HUD Form 52641, Part B, ¶ 6(d);

   e. "The owner must cooperate with the PHA and HUD in conducting equal opportunity compliance reviews and complaint investigations in connection with the HAP contract." HUD Form 52641, Part B, ¶ 9(b); and,

2

    f. "The owner must provide any information pertinent to the HAP contract that the PHA or HUD may reasonably require." HUD Form 52641, Part B, ¶ 11(a).

These searches do not come with any type of pre-compliance review or process for Plaintiffs to contest the search, and neither the HUD Form 52641 nor HUD's Section 8 regulations appear to require HUD/PHA to give reasonable notice to landlords before searching the above. 24 C.F.R. § 982 *et seq*. (mentioning notice but not in the context of HAP-permitted searches from HUD/PHA to the owner); HUD Form 52641 (mentioning notice but not in the context of HAP-permitted searches from HUD/PHA to the owner).

  4. In addition, Section 8 participation spurns new compliance costs, which overburdens mom-and-pop landlords like Plaintiffs. Moreover, the Section 8 rental contract requires landlords to waive rights they would have to ensure the safety of the building and evict abusive tenants that Virginia's Residential Landlord and Tenant Act (VRLTA) grants them.

  5. Plaintiff Lucinda LC owns a single nine-unit property located at 2012 6th Street South, Arlington, Virginia 22204, which is managed by Plaintiff June Wheatley. Lucinda is structured to benefit her father, who is the lone trustee of Lucinda's owning trust. While Plaintiffs strive to make the property accessible for tenants—including by renting to tenants with Veterans Affairs and privately-sponsored vouchers—they have eschewed renting to Section 8 tenants because of the loss of rights associated with the Arlington PHA's Housing Choice Vouchers (HCV) and HUD's required HAP contracts.

  6. On June 10, 2025, a "tester" with the Housing Rights Initiative (HRI) contacted Wheatley to ask about one of Plaintiffs' units, publicly advertised on Zillow for rent. The "tester" had no actual intention to rent the unit, but instead asked whether Plaintiffs would accept Section 8 vouchers as payment. When she politely responded no, the conversation quickly ended—only for HRI to then file a discrimination complaint against Plaintiffs with the State office(s) responsible for enforcing the VFHL.

7. Because of HRI's complaint, Plaintiffs now face a State investigation, potential monetary damages, potential professional discipline, potential injunctive relief forcing them to accept Section 8 vouchers and the forced waiver of Fourth Amendment rights. The only basis for such draconian penalties is a refusal to participate in a voluntary federal program. Therefore, to protect their own rights and similarly situated landlords in Arlington and Virginia, Plaintiffs bring this class action lawsuit seeking injunctive and declaratory relief against the Defendants charged with enforcing the State's Fair Housing Law against them.

## PARTIES

8. Plaintiff Lucinda LC is an LLC formed under Virginia law, headquartered and incorporated in the State of Virginia. The VENTURA MARITAL TRUST is the sole owner of Lucinda, with Wheatley's father serving as the trustee for the trust. VENTURA MARITAL TRUST has delegated "exclusive charge and control" of Lucinda's affairs to a single manager, Plaintiff June Wheatley.

9. Lucinda exists for the ownership and management of the apartment property at issue, located at 2012 6th Street South, Arlington, Virginia 22204. The property contains nine apartment units, all of which rent below the rates for which the Arlington PHA is willing to pay under its HCV (Section 8) voucher program. This means that if Plaintiffs wished to rent to Section 8 tenants, the current rates charged for apartments at their property would be fully funded by HCV vouchers under the Arlington PHA's locally-administered HCV program.

10. Plaintiff June Wheatley is a Virginia resident and the appointed manager of Lucinda. She was personally named in the aforementioned discrimination complaint by HRI seeking to enforce Virginia's "source of funds" discrimination protections against Plaintiff. Va. Code §§ 36-96.1:1, 36-96.3. Because Wheatley has "exclusive charge and control" of Lucinda's affairs, she also has delegated authority to bring suit on behalf of the company. Wheatley is also a licensed real estate salesperson in Virginia.

11. Defendant Jay Jones is sued in his official capacity as the Attorney General of Virginia. As Attorney General, he is the chief law enforcement officer of the State of Virginia and has express authority under the VFHL to enforce the law's provisions once a charge is referred to him by either the Virginia Fair Housing Board or Virginia Real Estate Board. Va. Code § 36-96.8. The Office of the Attorney General is located at 202 North Ninth Street, Richmond, VA 23219. Moreover, the Attorney General is a proper Defendant because Plaintiffs allege the federal statutes pertaining to Section 8 housing preempt the VFHL.

12. Defendants Kemper Funkhouser, Cavelle Mollineaux, Jeremy Dalpiaz, Aekta Chawla, Rene Fonseca, Pieri Burton, Bernice Travers, Rajesh Patel, and Kit Hale are sued in their official capacities as Members of the Virginia Real Estate Board (VREB). Plaintiffs believe the Board's office is located at 9960 Mayland Drive, Richmond, Virginia 23233, and that all Members are Virginia residents. The Board is responsible for enforcement of the VFHL against Virginia real estate licensees, which includes Wheatley. Va. Code §§ 36-96.8; § 54.1-2100 *et seq*.

13. Defendants Barry Moore, Brian Reagan, Morton Marks III, Amanda Buyalos, Angelas West, Stanley Reid, Shion Fenty, Stuart Gilchrist, Jay Som, Steven Rivera, John Scott, and Angelo Phillos are sued in their official capacities as Members of the Virginia Fair Housing Board (VFHB). Plaintiffs believe the Board's office is located at 9960 Mayland Drive, Richmond, Virginia 23233, and that all Members are Virginia residents. The Board is responsible for enforcement of the VFHL, and thus HRI's discrimination complaint against Lucinda falls within the VFHB's purview. Va. Code §§ 36-96.8; 54.1-2344. Moreover, the VFHL's statutory scheme does not give the VREB exclusive jurisdiction to enforce the VFHL against real estate licensees, so VFHB also has enforcement power against Wheatley as a property manager.

14. Defendant Anika Coleman is sued in her official capacity as Executive Director of both the Virginia Fair Housing Board (VFHB) and the Virginia Real Estate Board (VREB). Plaintiffs believe Coleman's office is located at 9960 Mayland Drive, Richmond, Virginia 23233.

**JURISDICTION**

15. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, which gives district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs solely bring claims for injunctive and declaratory relief based on violations of the U.S. Constitution.

16. Venue is proper in the Eastern District of Virginia under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district, and because the property at issue is located in this district.

**FACTS**

17. The Arlington, Virginia, Public Housing Authority (where Plaintiffs' rental properties are located) participates in the Section 8 program and administers vouchers under its local HCV program. Eligible tenants rent apartments on the private market using HCVs as payment, which have a capped dollar amount based on factors like the apartment's location and comparable rents in the area. Section 8 tenants can rent in excess of the HCV's capped dollar amount, but they cannot "exceed 40 percent of [] monthly adjusted income" on rent. When a prospective Section 8 tenant finds an Arlington apartment they'd like to rent, the landlord then signs a lease agreement with the tenant *and* a HAP agreement with the Arlington PHA. 24 CFR § 982 *et seq*.

18. On June 10, 2025, Wheatley was contacted by Kenyon Cavendar, a housing "tester" from the non-profit Housing Rights Initiative (HRI). HRI, like similar organizations, has activists pose as prospective renters and call available properties to see if their management/rental teams will accept a renter based on certain legally protected characteristics, and then brings litigation that it finds to be financially lucrative.

19. Cavendar made an audio recording of his call with Wheatley. He misrepresented himself as a renter named David Wilson and contacted Wheatley to ask, regarding the Lucinda studio unit at 2012 S. 6th St (Apartment 3), "I have section 8. Would I be able to use that?"

Wheatley replied, "The owner group does not accept any housing vouchers." Cavendar then asked "Oh so I wouldn't be able to use Section 8 here?" Wheatley then said, "correct," and Cavendar ended the conversation.

20.     That studio apartment was advertised for rent at $1,425/mo, meaning it is reasonable rent under applicable Section 8 regulations, 24 CFR § 982.507, and that a Section 8 voucher would pay for the apartment in its entirety because the Arlington PHA caps comparable efficiency apartment vouchers for Section 8 at roughly $2,200/mo. The apartment at issue is eligible for Section 8 vouchers under applicable regulations at this stage. 24 CFR § 982 *et seq*. This is true of Lucinda's other apartments at 2012 6th Street South, too.

21.     On September 23, 2025, HRI filed a complaint to the state through its counsel, Helen Hardiman, alleging that Plaintiffs personally committed housing discrimination based on "source of funds" for their refusal to rent based Section 8 vouchers. This opened a state-directed discrimination investigation against both Plaintiffs.

22.     HRI's complaint is stamped "REB File No. 2026-00304," indicating the VREB is involved, but the investigator's letterhead says she's from the "Virginia Fair Housing" Office, indicating VFHB has equities, too. Moreover, the complaint is against both Plaintiffs but the VREB lacks jurisdiction over Lucinda, because it's not a real estate licensee. All of the Virginia investigators and conciliators Plaintiffs have dealt with have "Department of Professional and Occupational Regulation" as their primary letterhead, which oversees *both* the VREB and VFHB.

23.     HRI's complaint alleged Plaintiffs refused to rent because of "Housing Choice Voucher[s]," which are a type of federally funded, locally administered Section 8 voucher. HRI claimed as its injury that it had to "divert resources to investigate the extent of the discriminatory practices" it uncovered.

24.     Plaintiffs already rent to tenants on other types of government assisted payments vouchers, such as disability payments and GI bill housing allowances from Veterans Affairs and student loan aid, but do not want to rent to Section 8 tenants. Doing so requires Plaintiffs to sign a HAP contract with the Arlington PHA, which would (a) waive Plaintiffs' Fourth Amendment

7

rights, by enabling PHA investigators to access Plaintiffs' property, equipment, computers and bookkeeping without a warrant; (b) waiving certain landlord rights under the VRLTA; and, (c) burden Plaintiffs with additional compliance costs.

25. The day after HRI's complaint was filed, a state investigator reached out to Plaintiffs and put them on notice of HRI's complaint and also asked for additional information and a response.

26. Plaintiffs, through their counsel, responded in writing to the allegations.

27. Separately, Dale Robinson, a state mediator, reached out on November 13 to invite the parties to conciliation, which Plaintiffs accepted through their counsel. Conciliation is an entirely voluntary, state-sponsored process for remedying alleged harms under the VFHL; if the parties to conciliation settle, the appropriate board (either VFHB or VREB) must still approve the settlement for Plaintiffs to be clear of further enforcement. Va. Code § 36-96.13.

28. Conciliation is ongoing at the time of this Complaint. As of the filing of this complaint, HRI has not agreed to a resolution that would not coercively require Plaintiffs to waive their Fourth Amendment and VRLTA rights.

29. If conciliation fails, Plaintiffs may be referred to the Attorney General for further civil enforcement action under Va. Code § 36-96.8. As of now, Plaintiffs face investigation by the VREB and VFHB and also civil remedies in accordance with Va. Code §§ 36-96.16 (Attorney General enforcement penalties), 36-96.18 (private enforcement penalties), and 36-96.18 (real estate licensee-specific penalties) by both the Defendants and HRI.

30. Plaintiffs intend to rent their properties in Arlington without accepting Section 8 vouchers as payment, and they do not want to sign a HAP contract with the Arlington PHA that would require them to waive their Fourth Amendment and VRLTA rights.

## CLASS ALLEGATIONS

**I.       Class Definition**

31.   Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification under Federal Rules of Civil Procedure 23(b)(2). The overarching class definition is "all current and future Virginia rental property owners, Virginia rental property managers, and Virginia real estate licensees who, at the time of filing this Complaint, own, manage, or work with at least five Virginia-based rental units which do not accept Section 8 vouchers." Plaintiffs seek to represent three sub-classes of persons preliminarily defined as:

      a. Lucinda represents all current and future Virginia rental property owners of at least five Virginia rental units who, as of the filing of this Complaint, do not accept Section 8 vouchers at these units;

      b. Wheatley represents all current and future Virginia rental property managers of at least five units who, as of the filing of this Complaint, work on behalf of a property owner that does not accept Section 8 vouchers at these units;

      c. Wheatley represents all current and future Virginia real estate licensees who, as of the filing of this Complaint, work with or for rental property owners that own at least five Virginia rental properties and do not accept Section 8 vouchers.

32.   Excluded from the classes are Defendants; officers and directors of Defendants and their parents, subsidiaries, and affiliates; and all judges assigned to hear any aspect of this case, as well as their immediate family members.

33.   Plaintiffs reserve the right to propose additional subclasses if discovery reveals that such subclasses are appropriate and to modify or amend the definition of the proposed class and subclasses.

34. This case is properly maintainable as a class action pursuant to and in accordance with Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure in that:

   a. The class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

   b. There are substantial questions of law and fact common to the class, specifically the shared constitutional violations and injuries;

   c. The claims of the representatives are typical of the claims of each class member, and the representatives will fairly and adequately protect the interests of the class; and

   d. The Defendants are acting on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## II. Numerosity

35. The number of Virginia property owners, property managers, and real estate licensees within the class is almost certainly over 250, and therefore is so numerous that joinder is impracticable. Each subclass itself is almost certainly over 250, too.

## III. Commonality

36. There are questions of law and fact common to the class, including but not limited to: (1) the forced waiver of Fourth Amendment rights through coerced participation in HAP contracts; (2) preemption of the VFHL's "source of funds" discrimination proscription by Section 8 statutes and regulations; (3) injuries from enforcement of the VFHL's "source of funds" provision against landlords, property managers, and real estate agents who do not wish to participate in Section 8 programs.

## IV. Typicality

37. Plaintiffs have the same interests in this matter as all the other members of the classes and their claims are typical of all the members of the class each Plaintiff represents. If brought and prosecuted individually, the claims of each class member would utilize the same evidence, rely upon the same legal theories, and seek the same type of relief.

38. The claims of the Plaintiffs and other class members have a common cause and their relief sought is of the same type. The claims all originate from Virginia's unlawful "source of funds" discrimination protection in the VFHL.

39. Plaintiffs have already suffered an injury in fact as a result of HRI's third-party enforcement of the VFHL. All Class Members, including Plaintiffs, are at credible risk of civil remedies by VFHB, VREB (for the real estate-licensed subclass), and/or the Attorney General of Virginia for their failure to accept Section 8 vouchers as consideration for leases.

## V. Adequacy of Representation

40. Plaintiffs' claims are sufficiently aligned with the interests of absent class members to ensure that the class claims will be prosecuted with diligence and care by Plaintiffs as a representative of each class. Plaintiffs will fairly and adequately represent the interests of their respective classes and they do not have interests adverse to their pertinent class.

41. Plaintiffs have retained the services of counsel who are experienced litigators, particularly with respect to class actions and Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs' counsel will vigorously prosecute this action and will otherwise fairly and adequately represent Plaintiffs and all absent class members.

42. Notice can be provided to members of the class by publication and broadcast, including but not limited to news media and social media platforms.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF PLAINTIFFS' FOURTH AND FOURTEENTH AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983

43. Plaintiffs incorporate and reallege all previous paragraphs of this complaint as if fully restated here.

44. The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. This protection extends to commercial properties, business records, and administrative inspections.

45. Plaintiffs are individuals and persons entitled to sue under 42 U.S.C. § 1983 to vindicate their rights protected under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures, as applied to the states through the Fourteenth Amendment.

46. Defendants, acting under color of state law in their official capacities as enforcers of the VFHL, have deprived and continue to deprive Plaintiffs of their rights secured by the Fourth Amendment. Specifically, the VFHL's "source of funds" provisions, Va. Code §§ 36-96.1:1, 36-96.3 mandates that landlords accept Section 8 vouchers as a condition of renting property without discrimination, thereby coercing Plaintiffs to enter into HAP contracts with local PHAs. These contracts, required by federal regulation to follow HUD Form 52641, compel landlords to consent to warrantless, on-demand inspections of their premises, equipment, and records by PHAs, HUD, and the Comptroller General, without probable cause, judicial oversight, or an opportunity for pre-compliance review.

47. Plaintiffs face a credible threat of enforcement by the Defendants under the VFHL to coerce them to accept Section 8 vouchers.

48. This coerced consent is invalid under the Fourth Amendment, as it arises from the threat of civil penalties, investigations, monetary damages, and injunctive relief under the VFHL for non-compliance. Plaintiffs have a reasonable expectation of privacy in their business premises,

records, and equipment, and the HAP provisions constitute unreasonable searches absent valid consent or a warrant. Defendants' enforcement of the VFHL directly causes this deprivation by making Section 8 participation effectively mandatory, contrary to federal law's voluntary framework.

49. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer irreparable harm, including the ongoing threat of investigation and enforcement as evidenced by the pending HRI discrimination complaint, and the forced choice between waiving constitutional rights or facing state sanctions.

50. Plaintiffs seek declaratory judgment that Defendants' enforcement of the VFHL's "source of funds" provision violates the Fourth Amendment under 42 U.S.C. § 1983, and permanent injunctive relief prohibiting such enforcement against Plaintiffs and the class.

## COUNT II: FEDERAL PREEMPTION

51. Plaintiffs incorporate and reallege all previous paragraphs of this complaint as if fully restated here.

52. The Supremacy Clause of Article VI of the United States Constitution invalidates state and local laws that interfere with, or are contrary to, the laws of Congress. Conflict preemption exists where the local law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

53. When Congress created the Section 8 program, it enshrined a "a statutory right to avoid Section 8 participation." *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 298 (2d Cir. 1998); *see also id.* at 300 ("the voluntariness provision of Section 8 reflects a congressional intent that the burdens of Section 8 participation are substantial enough that participation should not be forced on landlords."). Plaintiffs seek to exercise this statutory right and *not* participate in Section 8 housing, but the VFHL and HRI's complaint make that a damned-either-way endeavor.

54. Moreover, while the VFHL's singular focus on "source of funds" discrimination may increase the acceptance rates of Section 8 tenants, it also can increase the cost of housing,

decrease vacancy, consolidate landlords into corporate conglomerates, lead to increased Section 8 evictions, and lower the quality of Section 8 housing. All of these tradeoffs and consequences are for Congress to weigh, and it decided to "build a subsidized housing system that mirrored the private market—where private owners retain sole discretion over tenant selection." Jenna Bernstein, *Section 8, Source of Income Discrimination, and Federal Preemption: Setting the Record Straight*, 31 CARDOZO L. REV. 1407, 1424 (2010).

55. So long as the "source of funds" provision remains good law, Plaintiffs are harmed by their inability to voluntarily refuse to participate (or not) in the federal Section 8 program. Plaintiffs are entitled to seek equitable relief to enjoin the Defendants and their agents from enforcing the VFHL, which is unconstitutional because it is preempted by federal law and so violates the Supremacy Clause.

### COUNT III: DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201 & 2202

56. Plaintiffs incorporate and reallege all previous paragraphs of this complaint as if fully restated here.

57. Plaintiffs' rights and legal relations are affected by the VFHL, and Plaintiffs are entitled to seek this Court's determination of the validity of the VFHL and a declaration of their rights in accordance with 28 U.S.C. §§ 2201 & 2202.

58. The VFHL is invalid on its face and as applied to Plaintiffs because, by mandating that landlords either participate in the Section 8 program or risk bearing the consequences of violating the VFHL, it unconstitutionally coerces landlords to sign HAP contracts and thereby waive their rights against unreasonable searches and seizures, and/or unconstitutionally conditions landlords' ability to maintain rental permits and rent real property on providing such a waiver, all in violation of the Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.

59. The VFHL is invalid on its face and as applied to Plaintiffs because it actually conflicts with and is preempted by federal law that makes Section 8 participation voluntary, in violation of the Supremacy Clause of the United States Constitution.

60. An actual controversy exists between Plaintiffs and the Defendants in that Plaintiffs intend to engage in a course of conduct (continuing to decline to participate in the Section 8 program), where that conduct is affected with a constitutional interest but proscribed by the VFHL, and there is a credible threat of prosecution by the Defendants under the VFHL.

## REQUEST FOR RELIEF

61. Therefore, Plaintiff respectfully requests the following relief:

   a. Certify the proposed Classes under Rule 23(b)(2) of the Federal Rules of Civil Procedure;

   b. Designate Plaintiffs as representative of the proposed classes and designate their counsel as class counsel;

   c. Order injunctive relief prohibiting Defendants from enforcing the "source of funds" provisions of the VFHL, Va. Code §§ 36-96.1:1, 36-96.3, against Plaintiffs and all class members;

   d. A declaration that the VFHL is unconstitutional on its face and as applied to the Classes under the Fourth and Fourteenth Amendments to the United States Constitution;

   e. A declaration that the VFHL is unconstitutional on its face and as applied to the Classes under the Supremacy Clause of Article VI of the United States Constitution;

   f. Enter judgment in favor of the Plaintiffs and class members against the Defendants;

   g. Award Plaintiffs and the class members attorneys' fees and costs; and,

   h. Any other relief that the Court deems appropriate.

DATED this 21st day of January, 2026.

Respectfully submitted,

/s/ Jerome P. Friedlander, II
Jerome P. Friedlander, II
VA Bar No. 04771
Friedlander and Friedlander PC
1364 Beverly Road, Suite 101
McClean, VA 22101
Telephone: (703) 893-9600
Fax: (703) 893-9650
Email: jpfriedlander@friedlanderpc.com

Theodore H. Frank*
*pro hac vice* application to be filed
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (703) 203-3848
Email: ted.frank@hlli.org

Max A. Schreiber*
*pro hac vice* application to be filed
Hamilton Lincoln Law Institute
5868 E. 71st Street, Suite E709
Indianapolis, IN 46220
Telephone: (401) 408-9370
Email: max.schreiber@hlli.org

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, June Wheatley, on behalf of both myself and LUCINDA LC, have personal knowledge of the matters alleged in the foregoing complaint concerning our activities and intentions. I verify under penalty of perjury that the statements made therein are true and correct.

Executed on January 21st, 2026

/signed/ June Wheatley